IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| ROBIN LYNN SHEPARD, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:21-CV-03258-WJE |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Robin Lynn Shepard seeks judicial review[1] of a final administrative decision of the Acting Commissioner of Social Security ("Acting Commissioner") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-434, and supplemental security income ("SSI") under Title XVI of the SSA, 42 U.S.C. §§ 1382-1385. Administrative Law Judge Mary J. Leary ("ALJ") found that although Ms. Shepard had several severe and non-severe impairments, she retained the residual functional capacity ("RFC") to perform sedentary work with some limitations. After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. Therefore, the Acting Commissioner's decision is AFFIRMED.

### I. Background

Ms. Shepard filed a claim for DIB on March 22, 2017. (AR 378). She alleged a disability onset date of December 21, 2016, due to depression, anxiety, Hashimoto's disease, nausea, myalgia, sacroiliitis, intervertebral disc disorders with radiculopathy, spondylosis without

---

[1] With the consent of the parties, this case was assigned to a United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c).

myelopathy, leg pain, and low back pain. (*Id.* 212, 420). Her claim was initially denied on June 13, 2017. (*Id.* 212). She filed a written request for hearing, which was held on January 10, 2019. (*Id.*). On March 22, 2019, the ALJ denied Ms. Shepard's claim. (*Id.* 209). Ms. Shepard then applied for SSI on May 30, 2019. (*Id.* 227). The Appeals Council remanded her claim for DIB. (*Id.* 234-38). On April 20, 2021, a second hearing was held to evaluate Ms. Shepard's DIB and SSI claims. (*Id.* 15).

On May 17, 2021, the ALJ denied Ms. Shepard's claims. (*Id.* 15-30). The ALJ determined that although Ms. Shepard had severe impairments, none of them met or exceeded a listed impairment. (*Id.* 18-20). She also determined that Ms. Shepard had an RFC to perform sedentary work with certain limitations, including:

> [S]he can occasionally climb ramps and stairs; she can never climb ladders, ropes, and scaffolds; she can occasionally stoop, kneel, crouch, and crawl; she must avoid concentrated exposure to extreme heat, extreme cold, loud noise as defined in the SCO, vibration, bright sunlight, and respiratory irritants such as fumes, odors, dust, gases, and poor ventilation; she must avoid all exposure to hazards such as dangerous machinery and unprotected heights; she can understand, remember, and carry out uncomplicated commands involving simple instructions and make simple work-related decisions; she can sustain concentration, persistence, and pace through simple tasks; and she can have occasional interaction with coworkers, supervisors, and the general public.

(*Id.* 21). During the hearing on April 20, 2021, the ALJ asked a vocational expert ("VE") whether a hypothetical individual with Ms. Shepard's age, education, and work experience, along with the RFC identified above, would be capable of working. (*Id.* 29, 139-40). The VE testified that such an individual could perform work as a document preparer, final assembler, or stuffer. (*Id.* 29, 140).

Following the ALJ's decision, Ms. Shepard filed an appeal with the Appeals Council. (*Id.* 375-77). The Appeals Council denied her request for review, leaving the ALJ's decision as the final decision of the Acting Commissioner. (*Id.* 1-3). Because Ms. Shepard has exhausted all

administrative remedies, judicial review is now appropriate under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Disability Determination and the Burden of Proof

The burden of establishing a disability as defined by the SSA in 42 U.S.C. §§ 423(d) and 1382c(a) rests on the claimant. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). The SSA has established a five-step, sequential evaluation process for appraising whether a claimant is disabled and benefit-eligible. 20 C.F.R. §§ 404.1520 and 416.920; *see also Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019). The Commissioner must evaluate:

> (1) whether the claimant is presently engaged in a substantial gainful activity;
> (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities;
> (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations;
> (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and
> (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

*Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003) (citation omitted); *see also Perks v. Astrue*, 687 F.3d 1086, 1091-92 (8th Cir. 2012) (citation omitted).

## III. Standard of Review

The Eighth Circuit requires the reviewing court to "determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole." *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006) (quotation omitted). "Substantial evidence is less than a preponderance [of the evidence]," in that it merely requires that a reasonable person find the evidence adequate to support the Commissioner's decision. *Id.* (quotation omitted); *see also Cox v. Barnhart*, 345 F.3d 606, 608 (8th Cir. 2003).

The reviewing court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (noting the substantial evidence standard of review "defers to the presiding ALJ, who has seen the hearing up close"). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

## IV. Discussion

Ms. Shepard raises one issue in her appeal before the Court. She argues that the ALJ did not properly consider whether her migraines and lumbar impairments met or medically equaled a listed presumptively disabling impairment. (*See* Doc. 12 at 8-18). The Acting Commissioner argues that substantial evidence supported the ALJ's determination that Ms. Shepard's impairments did not meet or equal a listed impairment. (*See* Doc. 13 at 5-10). The Court finds that substantial evidence supports the ALJ's findings that Ms. Shepard's migraines and lumbar impairments did not meet or equal a listed presumptively disabling impairment.

"At Step 3 of the sequential evaluation, the ALJ must evaluate whether the claimant's severe impairments meet or equal a listing in [A]ppendix 1." *Nail v. Kijakazi*, No. 4:20-CV-1422-CDP, 2022 WL 832328, at *6 (E.D. Mo. Mar. 21, 2022) (citing 20 C.F.R. § 404.1520(a)(iii)). "Primary headache disorder is not listed in Appendix 1, but Social Security Ruling 19-4P explains that a primary headache disorder may medically equal a listing." *Id.* (citing SSR 19-4P, 2019 WL 4169635, at *7 (Aug. 26, 2019)).

> Epilepsy (listing 11.02) is the most closely analogous listed impairment for an MDI [medically determinable impairment] of a primary headache disorder. While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and [the ALJ] may find that his or her MDI(s) medically equals the listing.

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description . . . of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).
>
> Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning.

*Wright v. Saul*, No. 4:19-CV-4051, 2020 WL 5819539, at *2-3 (W.D. Ark. Sept. 30, 2020) (quoting SSR 19-4P, 2019 WL 4169635, at *7 (Aug. 26, 2019)). "Thus, to establish that her headaches equal either Listing 11.02B or 11.02D, [the claimant] must show headaches whose severity is equal to a dyscognitive seizure occurring at least once every two weeks for three consecutive months despite treatment." *Lerouge v. Saul*, No. 4:19-CV-00087-SPM, 2020 WL 905756, at *9 (E.D. Mo. Feb. 25, 2020). "The severity standards for Listing-level impairments are high, because the listings [for adults] were designed to operate as a presumption of disability that makes further inquiry unnecessary[.]" *Id.* at *8 (quoting *Malott v. Colvin*, No. 4:13-00877-CV-W-NKL, 2014 WL 2759421, at *3 (W.D. Mo. June 18, 2014)).

The ALJ evaluated Ms. Shepard's migraines and concluded that they did not equal 11.02B. (AR 19). The ALJ stated that objective medical evidence, including reports from Dr. Clara Applegate, Ms. Shepard's neurologist, did not demonstrate that Ms. Shepard's migraines were as frequent or severe as 11.02B requires. (*Id.*). For example, in November and August 2018, Ms. Shepard reported that she averaged one severe headache day every thirty days. (*Id.* 941, 947). In April, July, and October 2020, she reported that she averaged zero severe headaches every thirty

days. (*Id.* 1252, 1260, 1268). In January 2021, Ms. Shepard reported that she had one severe headache day in the last thirty days. (*Id.* 1276). Thus, substantial evidence in the record supports the ALJ's conclusion that Ms. Shepard did not experience severe headaches at least once every two weeks for three consecutive months. *See Lerouge*, 2020 WL 905756, at *9. While Dr. Stephen Genest opined that Ms. Shepard's migraines equaled 11.02B, Dr. Genest based his opinion on Ms. Shepard's testimony. (AR 121). The ALJ reasonably discounted Dr. Genest's opinion because it relied on Ms. Shepard's subjective complaints, which were inconsistent with the objective medical evidence. *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[T]he ALJ reasonably concluded that [the claimant's] statements lacked credibility, [so she could] discount [a medical expert's] opinion to the extent that it relied on [the claimant's] subjective complaints."). "Although [Ms. Shepard] certainly had headaches during the relevant period, some of which were very severe, [she] simply has not met the high burden of showing that those headaches were so severe, frequent, and unresponsive to treatment that they were equal in severity to Listing 11.02." *Lerouge*, 2020 WL 905756, at *10. Thus, the ALJ's determination that Ms. Shepard's migraines did not meet or equal Listing 11.02B is supported by substantial evidence.

"To establish that an impairment equals a listed impairment, 'a claimant must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" *Hussey v. Berryhill*, No. 4:17-CV-2507-SPM, 2019 WL 1275047, at *4 (E.D. Mo. Mar. 20, 2019) (quoting *Carlson v. Astrue*, 604 F.3d 589, 594 (8th Cir. 2010)) (emphasis in original). In order to meet Listing 1.15 the claimant has the burden to show a "[d]isorder[] of the skeletal spine resulting in compromise of a nerve root(s) . . . documented by A, B, C, and D." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.15. Listing 1.15D requires either a documented need for a mobility device, or an inability to use an upper extremity. *See id.*

The ALJ found that Ms. Shepard's lumbar impairments did not meet or equal 1.15, despite Dr. Genest's opinion that her lumbar impairments in combination equaled 1.15A, B2, and C. (AR 18-19). Dr. Genest's failed to discuss 1.15D altogether. (*Id.* 18, 121). There is also no indication from the record that Ms. Shepard required a mobility device or was unable to use an upper extremity due to her lumbar impairments. Medical examinations repeatedly demonstrated that Ms. Shepard could walk normally and had normal strength. (*Id.* 22). Since Dr. Genest's opinion and the medical evidence does not support a finding that Ms. Shepard's lumbar impairments met or equaled 1.15D and Ms. Shepard must present findings that her impairments were equal to all the criteria in a listed impairment, this Court finds that substantial evidence also supports the ALJ's finding that Ms. Shepard's lumbar impairments did not meet or equal a listed impairment. *See Hussey*, 2019 WL 1275047, at *4.

## V. Conclusion

For the reasons set forth herein, the Court finds that the Acting Commissioner's determination that Ms. Shepard was not disabled is supported by substantial evidence in the record. Judgment shall be entered in accordance with this Order.

Accordingly,

IT IS, THEREFORE, ORDERED that the decision of the Acting Commissioner is affirmed as set forth herein.

Dated this 23rd day of July 2022, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*

Willie J. Epps, Jr.
United States Magistrate Judge